UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Thomas E. Perez, | ) | CASE NO. 1:15 CV 226 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| | ) | |
| U.S. Cotton, LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 20). This case arises under the Family Medical Leave Act ("FMLA"). For the reasons that follow, the motion is GRANTED.

**FACTS**

Plaintiff, the Department of Labor, brings this action against defendant U.S. Cotton, LLC after plaintiff completed an investigation into defendant's termination of employee Yrsis Fana

1

("Fana").

On August 15, 2011, defendant hired Fana to work as a machine operator.[1]  At the time plaintiff worked for defendant, she spoke only Spanish.  According to defendant, it employs a substantial number of Spanish-speaking employees.  Defendant has numerous managers and human resources employees that speak Spanish.  Employees are never required or expected to speak in English regarding any work-related matter.

Upon hire, Fana attended a new hire orientation, where she received a copy of defendant's employee policies and procedures.  In addition, Fana received training regarding defendant's attendance and leave policies.  The documents and training were exclusively in English.  Fana signed an acknowledgment form indicating that she received copies of the employee policies and procedures.  The acknowledgment form is written in both English and Spanish.

Fana received two written warnings for attendance violations.  When Fana was absent from work, she called her supervisor and left a message in Spanish indicating that she would not be in attendance.  She also asked a co-worker to inform the supervisor because no one ever answered the telephone and Fana wanted to make sure the supervisor knew of the absence.  At one point, the voice mailbox became full, but that issue was resolved.  It does not appear that plaintiff claims she ever had an issue with the voice mailbox.

In October of 2012, Fana notified defendant that she was pregnant.  She informed defendant that she was experiencing morning sickness and may need to use FMLA leave.

---

[1] The Court notes that the corrective action forms defendant submits indicate a hire date of December 1, 2010.

2

Defendant provided her an FMLA form, which she took to her physician. The physician completed the form, which provides that the "condition" (*i.e.*, her pregnancy) commenced in October of 2012 and was expected to last "40 weeks total." With regard to her symptoms, the form noted: "Pt is having nausea/vomiting in early pregnancy. This should improve within the next 3 wks. However, she may be absent from work intermittently until this improves." In addition, the physician indicated that the condition would cause episodic flare-ups and that "if her vomiting is too severe, she may need time off intermittently." With regard to the frequency of the flare-ups, Fana's physician stated that the frequency was "uncertain. Maybe 1-2 days/wk for the next 3 wks." The form is signed November 5, 2012.

Fana returned the form to the human resources department and defendant approved Fana's request for leave. The approval letter, which is dated November 12, 2012, indicates that Fana must inform her supervisor if she intends to take FMLA leave so that her time can be recorded and thus any absences will not count against her. It further provides that leave was granted "due to the upcoming birth of your child." The letter is written in English.

Thereafter, Fana took FMLA leave for morning sickness. Fana testified that she never missed an entire 12-hour shift. Rather, she informed her supervisor that she did not feel well and left early. The time logs, however, show that Fana was absent on November 12th. In addition, on November 13th, the time logs show an entry of "2.13" instead of the usual 12-hour shift. The time log also shows an "FMLA" entry for 12 hours on December 3, 2012. Fana testified that she did not leave early on any days in January. According to defendant, plaintiff took FMLA leave on all three occasions and all time was designated as "FMLA." Plaintiff received no attendance "points" for these absences.

On February 11th and 12th, Fana was scheduled to work 12 hour shifts. According to Fana, she asked her brother, Vladimir Fana, to call in and report that she was sick. Fana testified that she asked Vladimir to call because she was not feeling well enough to attempt to communicate in English. Vladimir claims that he called Fana's supervisor early in the morning on February 11th and left a message indicating that Fana would not be at work on both the 11th and the 12th. Vladimir testified as follows:

> Q. Anything more that you recall about that message, or what your sister asked you to do other than what we talked about?
>
> A. Not really. She just told me what I needed to say in the message; her name, shift, the days she was calling off, the reason.
>
> Q. The reason was she was sick?
>
> A. Yes, the reason she was sick. Leave her phone number in case they needed to call her back for information.

Vladimir further testified as follows:

> Q. Other than the fact that your sister was sick, did you tell [defendant] there was any other reason why she wasn't going to be at work?
>
> A. No.

Fana also testified regarding the telephone call. According to her testimony,

> Q. What did you tell your brother?
>
> A. To call for me because a message had to be in English. I wasn't feeling really good. I really couldn't leave a message in English.
>
> Q. Your brother speaks English?
>
> A. Yes.
>
> Q. What else did you tell him?

4

>A. Nothing else. I gave him the instructions, told him the shift I was supposed to work and the supervisor's name.
>
>Q. Any else?
>
>A. That was it.
>
>Q. Did you tell him to leave a message that you were sick?
>
>A. I told him to leave a message to my supervisor, let him know how sick I was; the name, phone number, and the shift, so they know what shift I'm supposed to be working.
>
>Q. Anything else?
>
>A. Nothing else.

According to defendant, Fana's supervisor never received a message from Vladimir. Because Fana did not report to work for two consecutive days without notifying defendant, defendant terminated plaintiff's employment. Defendant sent Fana a certified letter informing her of the termination. On February 13th, Fana reported to work. Upon arrival, plaintiff's supervisor informed her that her employment was terminated for "no call/no show." Fana responded that she had in fact reported the absences. The supervisor told plaintiff that she could not work, but referred her to human resources.

Fana thereafter returned home and received the termination letter. Fana and Vladimir returned to defendant to speak to human resources. The two met with human resource manager Cathy Ruiz. The entire meeting was conducted in Spanish. Fana informed Ruiz that she did not abandon her job, but had been sick. She further told Ruiz that her brother called in and reported the absence. Vladimir showed Ruiz his cell phone log, which showed a two-minute call placed to the supervisor's cell phone on February 11th at 12:39 a.m. During the meeting, neither Fana nor her brother informed Ruiz that her sickness was due to her pregnancy or that the absence was

for FMLA reasons.

On February 15th, Fana and her brother met with Human Resources Generalist Crystal Beal. Beal was not aware of Fana's termination. During the meeting, Beal spoke in English and Fana's brother translated. Fana informed Beal that she was sick on the 11th and 12th. She claimed that she was purportedly terminated for failing to call in sick even though her brother did in fact call her supervisor and report the absence.

Thereafter, defendant conducted an investigation into the allegations raised by Fana. According to defendant, it communicated with three shift supervisors, all of whom indicated that they never received a call or voicemail regarding Fana's absence. Plaintiff notes, however, that it is not clear from notes made regarding the investigation whether defendant checked for messages on the correct date. Vladimir placed the call at 12:39 a.m. on Monday February 11th. In other words, the call was placed right after midnight on Sunday, February 10th. The notes, however, indicate that the call was made at "12:40 a.m. on Monday night February 11, 2013 into February 12, 2013."

Defendant also claims that it "made efforts" to track down the voice mail message, which included "working with USC's Information Technology Department and cellular phone provider." Ultimately, defendant was not able to confirm that Vladimir left a voicemail. After the investigation, defendant upheld Fana's termination. According to Deborah Keene, the Plant Resource Manager, Fana's termination was upheld because Fana's appeal of her termination was based solely on the phone records, which defendant could not verify. In addition, Keene avers that Fana and her brother indicated that Fana was "sick" on February 11th and 12th, but neither

6

"referenced the qualifying reason for leave or the need for FMLA leave.[2]"  After Fana's termination, defendant learned from two co-workers that on February 13th Fana indicated to them the she missed work on the 11th and 12th because her daughter was sick and hospitalized. Fana denies that she ever made these statements and, instead, testifies that she was not allowed on the plant floor and did not speak to anyone about the reason for her absence.

Subsequently, Fana registered a complaint with plaintiff and plaintiff investigated Fana's allegations.  During the course of the investigation, Fana informed plaintiff that she missed work because "I was vomiting a lot [and] dizzy.  I think I had a virus.  My daughter had it also."  Later, however, Fana testified at deposition that:

> Q. Did you ever tell anyone that you believed that on the 11th or 12th that you had a bad virus?
>
> A. No.
>
> Q. You never told anyone that?
>
> A. No.

During the investigation, Vladimir informed plaintiff's investigators that he told defendant in the voicemail that Fana would be absent from work on the 11th and 12th because she "was not feeling well because of her pregnancy."

Thereafter, plaintiff brought this lawsuit asserting that defendant "violated the provisions

---

[2]  In its motion, defendant argues that even if Vladimir left the message, Fana failed to follow defendant's attendance policies because she did not call the absence in herself and did not call off for each day of absence as required.  Defendant cites, however, to Keene's affidavit, which does not support this assertion.  The affidavit does not cite these two reasons in support of upholding the termination.

of section 105 of the [FMLA] in that it has interfered with, restrained, or denied Fana the exercise of rights provided under the [FMLA] or discharged or otherwise discriminated against Fana for asserting rights under the [FMLA].

Defendant moves for summary judgment and plaintiff opposes the motion.

## **STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is

"merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

1. Intereference

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). More specifically, the FMLA prohibits an employer from counting FMLA leave against an employee under its "no fault" attendance policy. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) (citing 29 C.F.R. § 825.220(c)). An employee believing he has been denied his FMLA rights may assert a cause of action for FMLA interference. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006).

To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which he was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003)).

The parties do not appear to dispute that Fana is an eligible employee and defendant is an eligible employer for purposes of the FMLA. Defendant argues that plaintiff is unable to satisfy prong three, *i.e.*, that she was entitled to FMLA leave for her February 11th and 12th absences. This is the first section appearing in defendant's brief. Plaintiff inexplicably responds, however, as follows:

10

>there is no dispute that [] Fana was an eligible employee of a covered employer, who was certified by [defendant], her employer, to take FMLA leave due to her pregnancy. It is also not disputed that Fana was denied FMLA leave, and terminated based upon her absences on February 11 and 12, 2013. The real dispute is whether Fana gave proper notice. As discussed below, numerous facts are in dispute regarding the fourth element of an interference claim.

Defendant argues that Fana has not demonstrated that she suffered from a serious health condition due to pregnancy on the days in question. According to defendant, Fana informed plaintiff's investigator that she had a virus, which her daughter also had. There is simply no evidence that Fana's absences were a result of her pregnancy. Defendant further points out that plaintiff's investigator testified that she did in fact consider that Fana had a virus. Apparently, over dinner one night, the investigator asked an unidentified doctor friend whether a virus could intensify morning sickness. The doctor "went, yeah, that would be reasonable." Defendant claims that this evidence is insufficient to crate a genuine issue of material fact.

Although responding in the context of the notice requirement, plaintiff does note that the FMLA certification indicates that plaintiff's condition is expected to last 40 weeks. In addition, plaintiff notes that one of defendant's human resources employees testified that had plaintiff needed time off for a prenatal appointment, the certification would have allowed plaintiff to use FMLA leave. In other words, defendant did not believe that the certification was limited to only a three week period exclusively for morning sickness. Plaintiff points out that there is no requirement that an employee see a health care provider each time the employee takes intermittent leave. Plaintiff also argues that Fana disputes that she was absent due to the illness of her daughter. In addition, plaintiff argues that Fana's brother informed investigators that he told defendant that has sister would not be able to attend work on February 11th and 12th

because she was "not feeling well because of her pregnancy." Plaintiff claims that this is sufficient to create a genuine issue of material fact as to the reason for Fana's absence as well as whether Fana notified defendant of the reasons.

Upon review, the Court finds that defendant is entitled to summary judgment. The Sixth Circuit Court of Appeals has held that a court should not "presume from [a] chronic condition and intermittent leave requests that [the employee] actually suffered from a serious condition on these specific days." *Tillman v. Ohio Bell Telephone Co.*, 545 Fed. Appx. 340 (6th Cir. 2013). "Otherwise, the medical certification attesting to an intermittent condition could be used as a license to take unnecessary medical leave, eliminating the employee's burden of showing entitlement." *Id*. Although the court in *Tillman* relied on the fact that the employer presented surveillance evidence impugning the credibility of the certificate, the court relied on these general propositions in determining that plaintiff has a burden to show entitlement on the days in question.[3]

This Court need not determine what level of proof is required when an otherwise valid certificate is on file and no impugning evidence exists. Here, there is simply no evidence whatsoever that Fana's absences were due to her pregnancy. *See*, 29 C.F.R. § 825.115(b)(a serious condition for FMLA purposes includes "[a]ny period of incapacity *due to* pregnancy"). *See also, Whitaker v. Bosch Braking Systems Div. of Robert Bosch Corp.*, 180 F.Supp.2d 922 (W.D. Mich. Aug. 2010)(pregnancy per se does not constitute a serious health condition and

---

[3]  *Tillman* required the plaintiff to show entitlement to FMLA leave even though he unquestionably claimed entitlement to leave by informing his employer that he would be using FMLA leave on a particular day. Here, however, plaintiff fails to present any evidence that Fana's absences fell under the FMLA in any fashion.

12

plaintiff can succeed in establishing her claim only if she can establish a period of incapacity due to her pregnancy). Fana has never indicated –even in the context of this case– that her absences on February 11th and 12th were due to or in any way tangentially related to the condition of pregnancy. Fana met with defendant's human resources department on two occasions after her termination and never indicated that the absences were due to pregnancy. Fana has consistently indicated only that she was "sick" on those days. Fana had every opportunity during the course of this lawsuit and in connection with the underlying investigation performed by plaintiff to clarify that her absences were somehow related to pregnancy. Neither Fana nor Vladimir provided an affidavit clarifying their testimony regarding the reason for Fana's absence. Unfortunately, the only evidence before this Court is that Fana was sick on those days. Absent *some* evidence of a relationship between the "sickness" and pregnancy, a juror would be unable to say that plaintiff was entitled to FMLA leave for those absences. Evidence that plaintiff was simply "sick" is not sufficient to create a genuine issue of material fact as Fana could have suffered from a number of "sicknesses" that have nothing to do with pregnancy.[4]

The only piece of evidence that arguably relates to this issue is the statement of Fana's brother. According to plaintiff's investigator, Fana's brother indicated during the investigation that he informed defendant that Fana was absent because she was "not feeling well because of

---

[4]  Nor is the casual conversation between plaintiff's investigator and an unknown doctor friend relevant. The doctor-friend testified that it would be "reasonable" that a virus could exacerbate morning sickness. Contrary to the investigator's testimony, however, Fana testified that she never informed anyone that she had a virus. Nor is there any evidence that Fana experienced morning sickness on the days in question. Thus, there is simply no admissible evidence that any sickness Fana suffered from was related to her pregnancy.

her pregnancy." Defendant argues that this aspect of the investigator's notes is not admissible and does not qualify under the public records exception to the hearsay rule. The Court agrees. *See Tranter v. Orick*, 460, Fed.Appx. 513, 2012 WL 386363, (6th Cir. February 7, 2012) ("The investigation report, however, contains no factual findings and thus does not fall within Rule 803(8)(iii)...[r]ather, it is simply a compilation of witness statements, all of which are hearsay). To the extent the notes could be admissible under the public records exception to the hearsay rule, the Court finds that issues of trustworthiness exist such that the statement should be excluded. As an initial matter, the Court is not in possession of a report or other complete document of plaintiff's investigation. Rather, plaintiff offers only the notes of the investigator's interview with Fana's brother. In addition, plaintiff is a party to this lawsuit. As defendant points out, the statement contained in the notes is inconsistent with the testimony of Fana's brother. Fana's brother testified that when he called defendant to report Fana's absences, he indicated that Fana was "sick." He stated that he did not offer any other reason for the absence. This testimony is consistent with Fana's deposition testimony that she instructed her brother to call and inform her supervisor that she was "sick." When asked if she instructed him to leave any other information she testified, "nothing else." On the whole, the Court finds that the investigator's notes lack sufficient indicia of trustworthiness for admissibility under the public records exception to the hearsay rule. Accordingly, the notes will not be considered.

Because there is no evidence that Fana was entitled to FMLA leave on the days of her February absences, summary judgment is warranted in favor of defendant. The Court need not reach defendant's argument regarding notice.

      2. Discrimination

Although arguably the complaint contains a claim for discrimination in violation of the FMLA, it appears that plaintiff abandoned any such claim. Defendant points out that the investigator testified that the information she obtained was not "indicative" of a claim for discrimination. Although the Court questions this conclusion given defendant's treatment of Fana in the context of her termination, the Court cannot substitute its judgment for the findings made by plaintiff. Here, Vladimir provided evidence showing that he did in fact place a phone call to Fana's supervisors. Moreover, defendant itself even claims that Fana could not come to work those days because her daughter was in the hospital. Defendant nonetheless upheld Fana's termination.

Defendant notes in its motion that the only claim remaining consists of an interference claim and moves for summary judgment with respect to that claim. In response, plaintiff notes that defendant moved for summary judgment on "all" pending claims. Thus, the Court finds that, to the extent the complaint contains a claim for discrimination in violation of the FMLA, defendant is entitled to summary judgment.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 20) is GRANTED.

    IT IS SO ORDERED.


                                        /s/Patricia A. Gaughan
                                       PATRICIA A. GAUGHAN
Dated: 2/11/16                     United States District Judge